DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Silver Powell has appealed from an order of the Summit County Common Pleas Court that found him guilty of one count each of gross sexual imposition and felonious assault and three counts of endangering children, and classified him as a sexual predator. This Court affirms in part, reverses in part, and remands the case for further proceedings consistent with this opinion.
 I.
Appellant and Jennifer Stevens had been living in their home with seven children: Shawn Stevens (age thirteen); Justin Stevens (age twelve); Allysia Stevens (age ten); Natashzia Powell (age eight); Silver Powell ("Silver III") (age five); Sachayiel Powell (age three); and Chereal Powell (age two).[1] Jennifer Stevens was the mother of all seven children. While Appellant was the biological father of only the four youngest children, he had been the father figure in all of the children's lives for approximately nine years.
On March 8, 1999, the Summit County Children's Services Board ("CSB") received a referral alleging that Appellant had beaten Shawn Stevens with a spiked dog collar. Akron Police then escorted Shawn out of the home of Appellant and his wife. Ultimately, Appellant pleaded guilty to one count of domestic violence as a result of this incident.
On July 31, 1999, the remaining children were removed from the home following additional allegations of Appellant's abuse. CSB social protective worker Jamie Pastorius was assigned to the children on August 11, 1999, and the children were referred to counseling. On October 15, 1999, CSB received another referral alleging further abuse by Appellant. Due to the seriousness of the allegations, CSB reported them to the Akron Police Department. Ms. Pastorius and Akron Police Detective Mychal Brown interviewed Allysia, Justin, and Natashzia. Ms. Pastorius observed several marks and scars on Allysia and Justin.
Following this interview, Ms. Pastorius brought Allysia and Justin to the Children At Risk Evaluation ("CARE") Center at Children's Hospital Medical Center of Akron ("Children's Hospital"), for further investigation of the allegations of abuse. At CARE, social worker Sherri Roberts first interviewed the children.
At trial, Ms. Roberts testified that during the interview, Allysia stated that Appellant had subjected her to some physical abuse as well as some "sexual stuff." In particular, Allysia told Ms. Roberts that Appellant tried to make her perform oral sex on him, and fondled her vaginal area under her clothes. Allysia estimated that this had happened approximately ten times. She also told Ms. Roberts that Appellant had made her touch his penis both under and over his clothes, had kissed her lips, and grabbed her chest and buttocks over her clothes. Ms. Roberts further testified that Allysia told her that Appellant had made her and her three youngest siblings watch pornographic movies, while Appellant was "touching [three-year-old] Sachayiel on her privacy," and Appellant "was touching Sachayiel's privacy with his fingers." Allysia told Ms. Roberts that Appellant had threatened to kill her and her siblings if they told anyone about the sexual abuse. Finally, Ms. Roberts testified that Allysia told her that both Appellant and the children's mother had beaten the children with extension cords and bats, "Little Tikes" golf clubs, cable cords, and curtain hangers.
Ms. Roberts also testified that at her interview with Justin, Justin described being beaten by Appellant on his face, arms, and legs with an extension cord, cable wire, an automobile engine belt, and "Little Tikes" baseball bats and golf clubs. Justin told Ms. Roberts that at one point he hadn't gone to school for a week because of the marks on his face. According to Justin, Appellant had been beating him and his sister since they were two and three years old.
After the interviews with Allysia and Justin, Ms. Roberts shared her findings with CARE's pediatric nurse Donna Abbott, who conducted physical exams of Allysia and Justin.[2] Ms. Abbott testified that during these exams she observed scars on the bodies of the children, which she stated were consistent with the children's descriptions of physical abuse. In addition, the exam of Allysia revealed indications of sexual abuse, which were likewise consistent with her allegations regarding Appellant.
Thereafter, Ms. Abbot shared her findings and report with Dr. Richard Daryl Steiner, attending physician in the Department of Emergency Medicine at Children's Hospital, and Medical Director of CARE. At trial, Dr. Steiner testified that the injuries sustained by Allysia and Justin were the result of physical abuse, and that Allysia was also the victim of sexual abuse.
Allysia and Justin also were placed under the care of Dr. Charel Kohl, psychologist and unit director at a branch of the Child Guidance Center.[3] Both children reported to Dr. Kohl physical abuse by Appellant, and Allysia also reported sexual abuse. Both children also reported abuse, both physical and sexual, of other children in the home, and expressed fears for the safety of themselves and their siblings. At trial, Dr. Kohl testified that both children were victims of physical abuse, and that Allysia had been sexually abused. In addition, Dr. Kohl testified that both children said they were threatened with physical harm by Appellant if they told anyone about the abuse. Justin told Dr. Kohl that he was forced by Appellant to sell drugs, and that Appellant also told him he had guns and bullets in the house. Dr. Kohl diagnosed both Allysia and Justin as having post-traumatic stress syndrome.
Officers Michael Gould, Sr. and Mychal Brown, both of the Akron Police Department, testified regarding their investigations of Appellant's prior arrest for domestic violence in connection with Shawn, and of the charges contested by Appellant on this appeal. Both Justin and Allysia also testified at trial, which testimony substantially consisted of the same descriptions of abuse the children had related to Ms. Roberts, Ms. Abbott, Dr. Steiner, and Dr. Kohl. Appellant testified on his own behalf, and also presented the testimony of several other witnesses.
After the defense rested, the trial court dismissed all counts of the original and supplemental indictments against Appellant except three counts of endangering children, two counts of rape, three counts of gross sexual imposition, and five counts of felonious assault. The jury found Appellant guilty of one count of gross sexual imposition, one count of felonious assault, and three counts of endangering children. Appellant was acquitted of all other counts.
Appellant was sentenced to three years imprisonment for his conviction for gross sexual imposition; five years for the count of felonious assault; five years for each of two counts of endangering children; and eighteen months for the remaining charge of endangering children. The trial court ordered Appellant to serve the sentences consecutively, and adjudicated him a sexual predator. Appellant has timely appealed, asserting seven assignments of error. This Court has rearranged Appellant's assignments to facilitate review.
 II. Assignment of Error Number One The trial court erred when it allowed the State's witnesses to repeatedly testify to alleged hearsay statements in violation of [Evid.R.] 801.
For his first assignment of error, Appellant has claimed that the trial court committed prejudicial error by permitting the State's witnesses to testify concerning hearsay statements allegedly made by Justin and Allysia. Specifically, Appellant has asserted that Ms. Pastorius, Ms. Roberts, Ms. Abbot, Dr. Steiner, and Dr. Kohl were improperly allowed to relate statements made by the children regarding physical and sexual abuse, participation in drug trafficking activities, and the children's awareness that Appellant kept firearms in the home. The State has responded, arguing that the testimony challenged by Appellant was properly admitted pursuant to the hearsay exception found in Evid.R. 803(4).
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Moreover, "[U]nless the trial court has clearly abused its discretion, an appellate court should not interfere in its determination." State v. Apanovitch (1987), 33 Ohio St.3d 19, 25. An abuse of discretion is more than an error of judgment, but instead, demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
"`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Generally, hearsay is not admissible evidence. Evid.R. 802. Evid.R. 803(4) provides an exception to the exclusion of hearsay statements and applies even where the declarant is available as a witness:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * * Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
Evid.R. 803(4) does not require that the individual diagnosing or treating the declarant be a physician in order for the hearsay exception to apply: "Indeed, statements made to a social worker are admissible pursuant to Rule 803(4) provided the surrounding circumstances are consistent with medical diagnosis or treatment." State v. Grooms (Aug. 19, 1998), Summit App. No. 18558, unreported, at 4. Moreover, "Rule 803(4) has been interpreted as including diagnosis or treatment related not only to physical injuries, but also to psychological injuries." Id., at 5.
In the instant case, Appellant has argued that testimony by Ms. Pastorius, Ms. Roberts, Ms. Abbot, Dr. Steiner, and Dr. Kohl, was not properly admissible under Evid.R. 803(4).[4]
The hearsay statements made to these witnesses are divisible into two categories: (1) statements made by Allysia and Justin to various State's witnesses while being diagnosed and medically treated for injuries sustained as a result of the allegations of abuse here on appeal; and (2) statements concerning alleged "bad acts" committed by Appellant which were not directly connected to the charges against him. Examples of hearsay in this second category are statements about alleged abuse of other siblings witnessed by Justin and Allysia; alleged threats of violence made by Appellant to the children to keep them quiet about the abuse; statements Justin made concerning Appellant's illegal drug activity and Justin's forced involvement therein; and statements made concerning Appellant's firearms and ammunition. While Appellant's arguments to this Court do not distinguish between these categories of hearsay statements, such a distinction is critical to the legal analysis of Appellant's first assignment of error.
While the record does not clearly indicate the basis for the admission of each hearsay statement, the trial court could have found that the hearsay statements challenged by Appellant were excepted from exclusion by the hearsay rule pursuant to Evid.R. 803(4). After a thorough review of the record, this Court cannot say that the trial court abused its discretion in finding that both categories of the statements challenged by Appellant were admissible under Evid.R. 803(4).
The distinction between these categories of hearsay statements, however, is crucial because the analysis turns on the relevance (or irrelevance) of these statements to the charges before the trial court. Hearsay statements in the first category are clearly relevant by their tendency to make the existence and cause of the injuries in connection with which Appellant was charged more probable than would be their existence without the hearsay statements. Evid.R. 401. The relevance to the charges against Appellant of statements in the second category, however, is not so unassailable. In other words, the tendency of these statements to make the existence of any fact of consequence to the determination of Appellant's guilt or innocence of the crimes with which he was charged more or less probable than without these statements is questionable.
As best this Court can ascertain, objections to the admissibility of hearsay statements in the second category would properly have been based on the questionable relevance of the statements made for purposes of diagnosis or treatment, to the adjudication of the charges brought against Appellant. However, Appellant has not advanced an articulable challenge supported by citations to the record to the relevance of the various statements he alleges to be hearsay in his arguments to this Court. App.R. 12(A)(2) provides:
 The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required by App.R. 16(A).
See also App.R. 16(A)(7). It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error. State v. McGuire (Dec. 14, 1994), Summit App, Nos. 16423 and 16431, unreported, at 4, appeal not allowed (1995),72 Ohio St.3d 1420. Appellant's first assignment of error is overruled.
 Assignment of Error Number Seven The trial court erred when it allowed the State's medical experts to give improper medical opinions that the alleged child victims were physically and sexually abused.
In this assignment of error, Appellant has argued that the trial court committed prejudicial error when it allowed Drs. Steiner and Kohl to render their expert opinions that Allysia had been sexually, and both Justin and Allysia had been physically, abused. The State has responded, arguing that the trial court acted within its discretion in admitting this expert testimony.
The Ohio Supreme Court has specifically stated that an expert may offer an opinion on whether a child has been sexually abused: "[A]n expert's opinion testimony on whether there was sexual abuse would aid jurors in making their decision and is, therefore, admissible[.]" State v. Boston
(1989), 46 Ohio St.3d 108, 128. Furthermore, Evid.R. 704 allows expert testimony concerning an ultimate issue to be decided by the trier of fact: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Appellant's assertion that the admission of expert opinions that the children had been abused improperly invades the province of the jury is therefore without merit.
Appellant also has contended that Dr. Steiner's opinions regarding physical abuse were improperly admitted because "Dr. Steiner had no training in the area of psychology or psychiatry[.]" However, Dr. Steiner's expert opinions concerned physical and sexual abuse, and did not involve psychological or psychiatric evaluations. Furthermore, the record reveals that Dr. Steiner had treated thousands of children and had specialized training in the prevention and detection of child abuse.
Accordingly, this Court finds no abuse of discretion by the trial court in allowing the State's experts to render opinions regarding the physical and sexual abuse of the children. Appellant's seventh assignment of error is overruled.
 Assignment of Error Number Two The Appellant received ineffective assistance of counsel when his counsel failed to object to numerous hearsay statements made by the State's witnesses.
 Assignment of Error Number Three The Appellant received ineffective assistance of counsel when he failed to timely object to the reputed facts of the Appellant's prior domestic violence conviction.
 Assignment of Error Number Five The Appellant received ineffective assistance of counsel when his counsel failed to object to the physician's testimony that he believed that the victim, Justin Stevens, was physically abused by his father.
In assignments of error numbers two, three, and five, Appellant has argued that his trial counsel was ineffective because counsel failed to object to (1) testimony that Appellant had abused other family members, (2) evidence regarding Appellant's prior conviction for domestic violence, and (3) Dr. Kohl's opinion that Justin was physically abused. The State has responded, arguing that Appellant's right to effective assistance of counsel was not violated.
A two-pronged test must be satisfied to determine that the right to effective assistance of counsel has been violated:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693. An appellant's demonstration of prejudice requires proof that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph three of the syllabus. This Court must also consider "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 80 L.Ed.2d at 695. The burden of proof is borne by the appellant, and he must overcome the strong presumption of the adequacy of counsel's performance and that counsel's action might be sound trial strategy. State v. Smith (1985),17 Ohio St.3d 98, 100. Failure to object to error, standing alone, is insufficient to prove ineffective assistance of counsel. State v.Holloway (1988), 38 Ohio St.3d 239, 244.
Appellant has first contended that his trial counsel was ineffective because counsel failed to object to testimony that Appellant had physically abused Silver III and Shawn, and had sexually abused Natashzia. However, the record reveals that trial counsel did in fact object to the testimony cited by Appellant, and that the trial court sustained these objections. Furthermore, as explained in this Court's discussion of Appellant's third assignment of error infra, the testimony regarding Appellant's prior conviction for physical abuse of Shawn was properly admitted as an element of the crime of endangering children. As such, Appellant's first contention that his trial counsel was ineffective is without merit.
Appellant has next asserted that trial counsel was ineffective by failing to object to testimony concerning Appellant's prior domestic violence conviction for beating Shawn with a spiked dog collar. However, the record shows that counsel did in fact object to the introduction of this evidence:
 DEFENDANT'S COUNSEL: Your Honor, again with respect to State's Exhibit 15 [indicating Defendant had been charged with domestic violence], when Officer Gould started to identify that exhibit I objected and asked for a side bar. At the side bar I asked, without disrupting the flow of the testimony, if I could have my objection raised later on, put on the record.
 And at this time we would object to the introduction of Exhibit 15. It's my impression that the State is bringing this in for purposes of trying to establish prior bad acts or prior similar acts and it's our contention, Your Honor, that the State is doing this not for purposes of establishing a plan or motive, but really they're trying to convince the jury that [Defendant] is capable of doing this sort of thing. I think that is against the spirit of the rule.
 THE COURT: All right, sir. Objection is noted and overruled.
Moreover, a previous conviction for an offense of child abuse is an element of child endangering, with which Appellant was charged and convicted. See R.C. 2919.22(E)(2)(b). The testimony concerning Appellant's prior conviction was therefore not in violation of Evid.R. 404(B).
Appellant has also argued that the failure to object to Dr. Kohl's opinion that Justin had been physically abused rendered his trial counsel ineffective. Again, however, the record reveals that Appellant's trial counsel did object to the State's questioning of Dr. Kohl about her expert opinion of whether Justin had been physically abused. Accordingly, Appellant's third assertion of ineffective assistance of counsel is likewise without merit.
For the foregoing reasons, Appellant's second, third, and fifth assignments of error are overruled.
 Fourth Assignment of Error The court erred when it ordered that the court room be cleared of spectators, which error was compounded when the court failed to articulate a constitutionally sufficient basis for the summary action taken.
Appellant has argued in his fourth assignment of error that the trial court violated his Sixth Amendment right to a public trial when it cleared the courtroom of spectators during the testimony of Allysia and Justin. The State has responded, arguing that Appellant has waived this argument on appeal.
This Court reviews a trial court's decision to exclude spectators from the courtroom under an abuse of discretion standard: "[T]he trial judge is responsible for the conduct of a trial and has discretion to issue reasonable orders excluding spectators in order to protect or to prevent intimidation of a witness." State v. Bayless (1976), 48 Ohio St.2d 73,109, vacated in part on other grounds (1978), 438 U.S. 911,57 L.Ed.2d 1155. An abuse of discretion means "more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
In the instant case, the record reveals that it was Appellant's counsel that specifically requested the trial court to clear the courtroom of all family members of Allysia and Justin, and did not object to the trial court's subsequent order that the courtroom be cleared. Any error was therefore invited by Appellant, and Appellant has waived this issue on appeal. See State v. Campbell (2000), 90 Ohio St.3d 320, 324.
The first request regarding restrictions on the presence of spectators in the courtroom was made by the State. The State first noted that Appellant had threatened harm to the children if they told anyone about the abuse, that they were suffering from post-traumatic stress syndrome, and that Natashzia had been intimidated by family members and would no longer talk to police or prosecutors. In addition, the State indicated that Appellant's father had been "a problem early on in the investigation" and that the Akron Police Department had to call Appellant's parents and tell them not to have any contact with the children. The State then asked that the court be cleared of all Appellant's family members.
Counsel for Appellant then responded "what's good for the goose is good for the gander," and requested the court to also exclude any of the children's relatives from the courtroom. Appellant's counsel stated his concern that the children "might be coached or somehow motivated" by the presence of their family members in the courtroom.
After listening to arguments from counsel, the trial court decided: "I will grant the defense motion and we will permit the children to testify without family members from either side present in the courtroom." When the trial resumed after the luncheon recess, however, the trial court apparently cleared the courtroom of all spectators: "[I]t is the decision of the Court to * * * clear the courtroom entirely for the testimony of these two witnesses. I'm not going to try to sort out who in the gallery area is affiliated with whom." While it appears from the record that the order to entirely clear the courtroom went beyond what was decided before the luncheon recess, counsel for Appellant failed to object to the expanded order to clear the courtroom.
In Bayless, supra, the trial court ordered the courtroom cleared of all spectators except news media reporters during the testimony of a witness to protect the witness' safety. Id. at 108. The trial court specifically stated that the decision was made with the consent of both the prosecution and defense counsel. Id. On appeal, the appellant alleged that the temporary clearing of the courtroom violated his right to a public trial. Id. at 109. In affirming the appellant's conviction, the Ohio Supreme Court stated:
 Further, when the judge stated that the order was by agreement of both the prosecutor and defense counsel, the defense not only failed to correct the judge or to suggest any lack of agreement, but on two occasions suggested ways of more effectually protecting the safety of the witness. Such circumstances dispel any reasonable claim of prejudice to this defendant and strongly indicate that this order was made for the benefit of the defense and with its active support.
(Emphasis added.) Id. at 110.
As in Bayless, Appellant's counsel failed to object to the trial court's order to clear the courtroom. If the trial court's order was different from what Appellant's counsel understood to be the "grant[ing of] the defense motion" consented to before the luncheon recess, the time to object was at the time of the order. By asking the trial court to clear the courtroom of all the children's family members, and failing to object when the trial court excluded all spectators from the gallery, Appellant has invited any alleged error, and waived this issue on appeal. Appellant's fourth assignment of error is overruled.
 Sixth Assignment of Error The trial court erred and abused its discretion when it designated the Appellant as a sexual predator without a hearing[.]
In his sixth assignment of error, Appellant has argued that the trial court erred when it adjudicated him a sexual predator without holding a hearing.
R.C. 2950.09(B)(1) provides:
 [I]f a person is to be sentenced * * * for a sexually oriented offense that is not a sexually violent offense, * * * the judge who is to impose sentence upon the offender shall conduct a hearing to determine whether the offender is a sexual predator.
In the instant case, Appellant was convicted of the sexually oriented offense of gross sexual imposition. R.C. 2950.01(D)(1). The State has conceded that the trial court's failure to hold a hearing constituted reversible error. Accordingly, Appellant's sexual predator classification must be vacated and the matter remanded to the trial court for a hearing in accordance with R.C. 2950.09. State v. Gowdy (2000), 88 Ohio St.3d 387,399. Appellant's sixth assignment of error is sustained.
 III.
Appellant's sixth assignment of error is sustained, and the remainder of his assigned errors are overruled. The matter is remanded to the trial court for the limited purpose of holding a sexual predator hearing pursuant to R.C. 2950.09.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
BATCHELDER, P.J., SLABY, J. CONCUR.
[1] The children's respective ages are those reported on the day of trial.
[2] Ms. Abbot was present during Allysia's interview with Ms. Roberts, but not Justin's.
[3] This Court refers to Charel Kohl as "Dr." Kohl, recognizing that Dr. Kohl has a Ph.D. in psychology but is not a medical doctor.
[4] As a preliminary matter, this Court notes that the record reveals that objections were raised and sustained as to many of the hearsay statements Appellant cites as erroneously admitted at trial.